NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEONID VAYN<br><br>        Plaintiff,<br><br>    v.<br><br>PATRICIA WOLFF SCHAEN a/k/a PATRICIA ANN WOLFF, MELVYN TANENBAUM, EVAN TANENBAUM, JOHN J. ANDREWS, and JOHN or JANE DOES 1-5<br><br>        Defendants. | Civ. No. 16-461<br><br>OPINION |

THOMPSON, U.S.D.J.

**INTRODUCTION**

This matter is before the Court upon two motions that both seek to dismiss the complaint for lack of personal jurisdiction, or in the alternative, to transfer venue to the Eastern District of New York. One motion was filed by Defendant Evan Tanenbaum ("Defendant Tanenbaum"). (ECF No. 5). The second motion was filed by Defendant John J. Andrews ("Defendant Andrews"). (ECF No. 20). Plaintiff Leonid Vayn ("Plaintiff") opposed Defendant Tanenbaum's motion. (ECF No. 14). Since the defendants' motions are quite similar, the Court will consider Plaintiff's arguments with regards to both motions. Plaintiff also cross-moves for leave to conduct jurisdictional discovery. (ECF No. 14). The Court has decided all the motions based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, the defendants' motions will be granted, and Plaintiff's motion will be denied.

1

## BACKGROUND

This case is about a purported scheme to borrow significant sums of money from Plaintiff with the intention of never fully repaying Plaintiff. Plaintiffs' allegations are as follows: Plaintiff was introduced to Defendant Patricia Wolff Schaen through a friend of a friend in the summer of 2008. Defendant Schaen purported to be a New York City-based socialite who needed to borrow money from someone outside of her social circle. She was willing to pay 20% per annum interest on the loan. Plaintiff and Defendant Schaen met at her Fifth Avenue apartment in New York City where they discussed the terms of the loan. Defendant Schaen told Plaintiff at this meeting that her boyfriend was Melvyn Tanenbaum, a justice in the New York state court system, and that his son, Evan Tanenbaum ("Defendant Tanenbaum"), was a lawyer who could prepare the loan documents. Plaintiff agreed to loan Defendant Schaen $200,000 at 20% interest, and Defendant Schaen said she would make sure Plaintiff received the loan documents soon.

Plaintiff did not receive the loan documents for some time, and followed up with Defendant Schaen. She told him that the delay was caused by Defendant Tanenbaum's absence, but that another attorney who shared office space with him, Defendant Andrews, could prepare the documents using Defendant Tanenbaum's standard forms. Plaintiff then received the loan documents prepared by Defendant Andrews. Both Defendant Tanenbaum and Defendant Andrews reside and work in Port Jefferson, New York. Plaintiff's then-attorney Christopher Costa reviewed the loan documents for Plaintiff. Attorney Costa asked Defendant Andrews to revise the documents to state that the agreement would be governed by New Jersey law and that the venue for any litigation would be in Mercer County, New Jersey, where Plaintiff lives. Defendant Tanenbaum sent Attorney Costa revised documents, which stated that the venue for any litigation would be in Mercer County, New Jersey, but also stated that New York law would

govern the agreement. Plaintiff believed that Defendant Tanenbaum's insistence on New York law was inconsequential. A few more emails were exchanged between Attorney Costa and Defendant Tanenbaum, and eventually the agreement was executed and the loan was funded, with New York law governing the agreement.

Defendant Schaen made payments on the loan, with some disruptions. In summer 2011, while she was still paying off the loan, Defendant Schaen asked Plaintiff for another loan for $50,000 at 20% interest, which Plaintiff agreed to. In October 2012, Defendant Schaen asked Plaintiff for another loan for $20,000, again at 20% interest. She had been making some, though not all of the payments due on the 2008 and 2011 loans, so Plaintiff agreed to make her the $20,000 loan as well. Plaintiff believes that Defendant Tanenbaum prepared the loan documents for both the 2011 and 2012 loans. In November 2013, Defendant Schaen asked for a loan of $40,000 at 20% interest. Plaintiff declined to make this loan to Defenant Schaen. Thereafter, Defendant Schaen refused to make any further payments on any of the loans.

In July 2015, Plaintiff wrote to Defendant Schaen, informing her that she was in default on her loans and that he was accelerating the balances due. Defendant Schaen's boyfriend Judge Melvyn Tanenbaum responded to Plaintiff's letter. He informed Plaintiff that the 20% rate of the loans was illegal and usurious under New York law,[1] so therefore Plaintiff's claims were unenforceable. He also threatened Plaintiff by asserting that Defendant Schaen could make claims to recover the payments that she had previously made to Plaintiff. Plaintiff's attorney Christopher Costa responded to Judge Melvyn Tanenbaum's letter. Attorney Costa attached a calculation of the loan balances due utilizing New York's maximum permissible lending rate of 16%, reflecting a balance due of $120,090. Plaintiff Schaen has refused to pay the balance.

---

[1] The Court takes judicial notice that the 20% rate would have been legal under New Jersey law. N.J. Stat. Ann. § 2C:21-19.

3

Plaintiff filed a complaint in New Jersey Superior Court on December 7, 2015. Defendant Tanenbaum removed the case to this Court on January 27, 2016. Defendant Tanenbaum then moved to dismiss Plaintiff's complaint, or in the alternative, to transfer venue to the Eastern District of New York. In response, Plaintiff amended his complaint, opposed Defendant Tanenbaum's motion, and cross moved for leave to conduct jurisdictional discovery. Defendant Andrews then separately moved to dismiss Plaintiff's amended complaint, or in the alternative, to transfer venue to the Eastern District of New York. These three motions are presently before the Court.

## **LEGAL STANDARDS**

When reviewing a motion to dismiss, a district court "must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (citing *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). To defeat a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Flagship Interval Owner's Ass'n, Inc. v. Philadelphia Furniture Mfg. Co.*, No. 09-1173, 2010 WL 1135736, at *3 (D.N.J. Mar. 22, 2010) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Where, as here, no evidentiary hearing was held on the jurisdictional issue, "the plaintiff[s] need only establish a prima facie case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (alteration in original) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

A plaintiff may meet his burden by establishing that a court either has "general" or "specific" jurisdiction. *Provident Nat'l Bank*, 819 F.2d at 437. A court can exercise specific

jurisdiction when a defendant purposely directs his activities at the forum, the litigation arises out of at least one of those activities, and the exercise of jurisdiction would "comport with 'fair play and substantial justice.'"  *O'Connor*, 496 F.3d at 317 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 463 (1985)).  If a defendant maintains "continuous and substantial" contacts with a forum, a court can exercise general jurisdiction.  *Id.* at 321.

## ANALYSIS

Federal district courts "have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits."  *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey has a long-arm statute that permits the assertion of personal jurisdiction to the same extent as the Fourteenth Amendment to the United States Constitution.  *Carteret*, 954 F.2d at 145.  Therefore, federal constitutional law must be applied to determine whether this Court has personal jurisdiction over Defendant Tanenbaum or Defendant Andrews.  *See Decker v. Circus Circus Hotel*, 49 F. Supp. 2d 743, 746 (D.N.J. 1999).

### I.      Defendant Tanenbaum's Motion

Plaintiff and Defendant Tanenbaum agree that Defendant Tanenbaum resides in New York.  Defendant Tanenbaum argues that even taking all allegations in the complaint as true, Plaintiff has failed to demonstrate that this Court may exercise specific or general jurisdiction over him.  Plaintiff concedes that this Court lacks general jurisdiction over Defendant Tanenbaum.  Therefore, the Court will only discuss specific jurisdiction.

Specific jurisdiction exists when a defendant has sufficient minimum contacts with a forum state that he "should reasonably anticipate being haled into court there."  *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial

5

connection' with the forum State." *Burger King Corp.*, 471 U.S. at 475 (citations omitted). When performing a minimum contacts analysis, a court must find that the defendant purposefully availed himself of "the privilege of conducting activities within the forum" in order to find jurisdiction. *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 554 (3d Cir. 1993). The logic articulated by the Supreme Court is that "it is presumptively not unreasonable to require [a defendant] to submit to the burdens of litigation in that forum" where his activities have been "shielded by 'the benefits and protections' of the forum's laws." *Burger King Corp.*, 471 U.S. at 476 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[S]ome minimal correspondence alone" is insufficient to show that a defendant has established the required minimum contacts within a forum. *Carteret*, 954 F.2d at 149.

Plaintiff offers a list of twelve "activities" that Defendant Tanenbaum "purposefully directed" at Plaintiff from 2008 through 2012. (Pl.'s Br. at 17-20, ECF No. 14-2). Nine of these activities were emails, one was a phone call, and two are allegations that Defendant Tanenbaum prepared the 2011 and 2012 loan documents. Plaintiff also offers a list of activities Defendant Tanenbaum allegedly directed at another New Jersey resident who is not a party to this lawsuit. (*Id.* at 20). However, since those activities are unrelated to the present litigation, the Court will not consider them here. *See Burger King Corp.* 471 U.S. at 472 (describing the relevant activities in a specific jurisdiction analysis as the activities that are related to or gave rise to the plaintiff's injury); *cf. Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (undertaking a general jurisdiction analysis of a defendant's "continuous and systematic general business contacts" in a forum.).

Plaintiff's list of Defendant Tanenbaum's activities is insufficient to demonstrate that Defendant Tanenbaum had the requisite minimum contacts with New Jersey. Of the nine emails listed, only seven were sent by Defendant Tanenbaum, and of those seven, only five were

6

addressed to Plaintiff's then-attorney (the other two were addressed to Defendant Schaen, with Attorney Costa copied on them). Defendant Tanenbaum only sent these emails to Plaintiff's attorney in order to facilitate Plaintiff's agreements with Defendant Schaen. This fact weighs against a finding that Defendant Tanenbaum purposefully directed his activities towards New Jersey. Defendant Tanenbaum did not proactively seek "the privilege of conducting activities within the forum." *Mellon Bank*, 983 F.2d at 554. In cases where a defendant contracts directly with a plaintiff, it is highly relevant if the contract is executed solely at the behest of the plaintiff. *See id.* at 557 (an out-of-state defendant's contract with a resident does not by itself allow a court to exercise jurisdiction over the defendant, particularly when the contract was executed at the resident's request). Moreover, "a few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998). Plaintiff only met with Defendant Schaen in New York, agreed to have the loan documents drawn up by Defendant Tanenbaum in New York, and the lynchpin of the entire alleged fraud is New York's usury law. New York is the focus of the parties' dispute. Plaintiff is unable to demonstrate that Defendant Tanenbaum purposefully established minimum contacts in New Jersey; therefore, the Court cannot assert personal jurisdiction over Defendant Tanenbaum based on a traditional minimum contacts analysis.

      Plaintiff proposes an alternative framework for the Court to utilize to find personal jurisdiction, an "effects test" that is specific to intentional torts. Plaintiff argues that Defendant Tanenbaum intentionally committed fraud, which was "calculated to create an actionable event in New Jersey, thereby giving New Jersey jurisdiction over him." (Pl.'s Br. at 22, ECF No. 14-2). Plaintiff provides on-point New Jersey case law for this assertion. *See, e.g, Blakey v. Cont'l Airlines, Inc.*, 751 A.2d 538, 555 (N.J. 2000). However, Plaintiff does not fully explore the requirements of the effects test that is used in intentional torts cases. In *IMO Industries, Inc. v.*

*Kiekert AG*, 155 F.3d 254 (3d Cir. 1998), the Third Circuit discussed the requirements of the effects test in detail.  The test has three required elements:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity;

155 F.3d at 265-66.  The third element cannot be satisfied solely by asserting that a defendant knew that a plaintiff was located in the forum.  *Id.* at 265.  Rather, the third element requires that a defendant "manifest behavior intentionally targeted at and focused on" the forum.  *Id.* (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).  Plaintiff has not carried his burden on this element.  The only evidence Plaintiff offers is that the loan documents specify that the venue for a dispute between Plaintiff and Defendant Schaen must be Mercer County, New Jersey.  (Pl.'s Br. at 22, ECF No. 14-2).  However, this clause was included because Plaintiff's attorney requested it, not because Defendant Tanenbaum wished to target New Jersey.  (Pl.'s Am. Compl. at ¶ 32, ECF No. 12).  Therefore, Plaintiff fails to demonstrate that Defendant Tanenbaum expressly aimed his conduct at New Jersey, and he cannot satisfy the third element of the effects test.  The Court does not need to consider the other two elements when the third element is not met.  *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

The Court finds that Plaintiff cannot establish that personal jurisdiction over Defendant Tanenbaum is proper under the effects test, or under a traditional minimum contacts analysis.  Therefore, the claims against Defendant Tanenbaum will be dismissed for lack of personal jurisdiction.  Consequently, the Court will not reach Defendant Tanenbaum's alternative arguments on the proper venue for this matter.

## II.     Plaintiff's Cross Motion

Plaintiff cross moves for leave to conduct jurisdictional discovery to establish that personal jurisdiction over Defendant Tanenbaum is proper.  Courts should permit jurisdictional discovery if a plaintiff "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (alteration in original) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  Plaintiff has not presented allegations that suggest the possible existence of the requisite contacts.  Plaintiff requests discovery from Defendant Tanenbaum to confirm the extent of the communications between him and Plaintiff's former attorney Christopher Costa.  (Pl.'s Br. at 30, ECF No. 14-2).  However, Attorney Costa already submitted a certification and copies of the emails between him and Defendant Tanenbaum.  (ECF No. 14-6).  There is no reason to think that Defendant Tanenbaum would have information about additional communications with Attorney Costa beyond what Attorney Costa has already provided to Plaintiff.   Plaintiff also requests discovery about Defendant Tanenbaum's communications with other alleged victims of the borrowing scheme.  However, as explained in the previous section, Defendant Tanenbaum's communications with other alleged victims who are not parties to this case are not relevant to a specific jurisdiction analysis.

Since Plaintiff has not presented factual allegations that suggest the possible existence of contacts that would provide this Court with personal jurisdiction over Defendant Tanenbaum, Plaintiff's motion to conduct jurisdictional discovery will be denied.

## III.     Defendant Andrews' Motion

Defendant Andrews moves to dismiss the claims against him for lack of personal jurisdiction, or in the alternative, to transfer venue to the Eastern District of New York.

9

Defendant Andrews had substantially less to do with the alleged borrowing scheme than Defendant Tanenbaum, since Plaintiff alleges that Defendant Andrews only prepared the initial draft of the 2008 documents when Defendant Tanenbaum was apparently out of the office. (Pl.'s Am. Compl. at ¶¶ 29-34, ECF No. 12). Defendant Andrews was not involved in the communications between Attorney Costa and Defendant Tanenbaum about the 2008 loan documents, nor was he allegedly involved at any later date. Using the same analysis the Court applied to Defendant Tanenbaum, the Court finds that it lacks personal jurisdiction over Defendant Andrews. Defendant Andrews did not purposefully avail himself of the privilege of conducting business in New Jersey, *Mellon Bank*, 983 F.2d at 554, nor did he expressly aim his allegedly tortious conduct at New Jersey, *IMO Indus.*, 155 F.3d at 266. Therefore, the claims against Defendant Andrews will be dismissed for lack of personal jurisdiction.

## CONCLUSION

For the reasons discussed above, Defendant Tanenbaum's and Defendant Andrews' motions to dismiss will be granted. An appropriate order will follow.

                                           */s/ Anne E. Thompson*
                                           ANNE E. THOMPSON, U.S.D.J.

Date: May 17, 2016