NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEONID VAYN,<br><br>        Plaintiff,<br><br>    v.<br><br>PATRICIA WOLFF SCHAEN a/k/a PATRICIA ANN WOLFF, MELVYN TANENBAUM, EVAN TANENBAUM, JOHN J. ANDREWS, and JOHN or JANE DOES 1-5,<br><br>        Defendants. | Civ. No. 16-461<br><br>OPINION |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter is before the Court upon Defendant Patricia Wolff Schaen's ("Defendant") motion to dismiss, or in the alternative, to transfer this case to the Eastern District of New York. (ECF No. 31). Plaintiff Leonid Vayn ("Plaintiff") opposes the motion. (ECF No. 32). The Court has decided the motion based on the written submissions of the parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendant's motion will be denied.

## BACKGROUND

This case concerns a purported scheme to borrow significant sums of money from Plaintiff with the intention of never fully repaying Plaintiff. Plaintiff's allegations are as follows: Plaintiff was introduced to Defendant through a friend of a friend in the summer of 2008. Defendant purported to be a New York City-based socialite who needed to borrow money from

1

someone outside of her social circle. She was willing to pay 20% per annum interest on a loan. Plaintiff and Defendant met at Defendant's Fifth Avenue apartment in New York City where they discussed the terms of the loan. Defendant told Plaintiff at this meeting that her boyfriend was Melvyn Tanenbaum, a justice in the New York state court system, and that his son Evan Tanenbaum was a lawyer who could prepare the loan documents. Plaintiff agreed to loan Defendant $200,000 at 20% interest.

Plaintiff did not receive the loan documents for some time, and followed up with Defendant. She told him that the delay was caused by Evan Tanenbaum's absence, but that another attorney who shared office space with him, John J. Andrews, could prepare the documents using Defendant Tanenbaum's standard forms. Plaintiff then received the loan documents prepared by Mr. Andrews. Both Evan Tanenbaum and Mr. Andrews reside and work in Port Jefferson, New York. Plaintiff's then-attorney Christopher Costa reviewed the loan documents for Plaintiff.

Attorney Costa asked Mr. Andrews to revise the documents to state that the agreement would be governed by New Jersey law and that the venue for any litigation would be in Mercer County, New Jersey, where Plaintiff lives. Evan Tanenbaum sent Attorney Costa revised documents, which stated that the venue for any litigation would be in Mercer County, New Jersey, but also stated that New York law would govern the agreement. Plaintiff believed that Evan Tanenbaum's insistence on New York law was inconsequential. Eventually the parties executed the agreement and the loan was funded, with New York law governing the agreement, and with Mercer County, New Jersey selected as the venue for any action relating to the agreement.

Defendant made payments on the loan, with some disruptions. In summer 2011, while she was still paying off the loan, Defendant asked Plaintiff for another loan for $50,000 at 20%

interest, which Plaintiff agreed to.  In October 2012, Defendant asked Plaintiff for another loan for $20,000, again at 20% interest.  She had been making some, though not all of the payments due on the 2008 and 2011 loans, so Plaintiff agreed to make her the $20,000 loan as well.  In November 2013, Defendant Schaen asked for a loan of $40,000 at 20% interest.  Plaintiff declined to make this loan to Defendant.  Thereafter, Defendant refused to make any further payments on any of the loans.

In July 2015, Plaintiff wrote to Defendant, informing her that she was in default on her loans and that he was accelerating the balances due.  Defendant's boyfriend Melvyn Tanenbaum responded to Plaintiff's letter.  He informed Plaintiff that the 20% rate of the loans was illegal and usurious under New York law,[1] so therefore Plaintiff's claims were unenforceable.  He also threatened Plaintiff by asserting that Defendant could make claims to recover the payments that she had previously made to Plaintiff.  Plaintiff's attorney Christopher Costa responded to Judge Melvyn Tanenbaum's letter.  Attorney Costa attached a calculation of the loan balances due utilizing New York's maximum permissible lending rate of 16%, reflecting a balance due of $120,090.  Defendant has refused to pay the balance.

Plaintiff filed a complaint in New Jersey Superior Court on December 7, 2015.  Evan Tanenbaum removed the case to this Court on January 27, 2016.  Mr. Tanenbaum moved to dismiss Plaintiff's complaint, or in the alternative, to transfer venue to the Eastern District of New York.  In response, Plaintiff amended his complaint, opposed Defendant Tanenbaum's motion, and cross moved for leave to conduct jurisdictional discovery.  Mr. Andrews then separately moved to dismiss Plaintiff's amended complaint, or in the alternative, to transfer venue to the Eastern District of New York.

---

[1] The Court takes judicial notice that the 20% rate would have been legal under New Jersey law. N.J. Stat. Ann. § 2C:21-19.

3

This Court resolved these motions on May 18, 2016. The Court found that it lacked personal jurisdiction over Evan Tanenbaum and John J. Andrews, and accordingly dismissed them from the case. The Court also denied Plaintiff's motion for leave to conduct jurisdictional discovery. On June 2, 2016, Plaintiff filed a motion pro se, relying in part on Evan Tanenbaum's and John J. Andrews' briefs. She requested Plaintiff's complaint be dismissed for lack of personal jurisdiction and improper venue, or in the alternative, that the case be transferred to the Eastern District of New York. This motion is presently before the Court.

## **LEGAL STANDARDS**

When reviewing a motion to dismiss, a district court "must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (citing *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). To defeat a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Flagship Interval Owner's Ass'n, Inc. v. Philadelphia Furniture Mfg. Co.*, No. 09-1173, 2010 WL 1135736, at *3 (D.N.J. Mar. 22, 2010) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Where, as here, no evidentiary hearing was held on the jurisdictional issue, "the plaintiff[s] need only establish a prima facie case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (alteration in original) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

Parties may move under Federal Rule of Civil Procedure 12(b)(3) to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). The moving party bears the burden of establishing improper venue. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). Additionally, a

party may request a transfer of venue under 28 U.S.C. § 1404(a), which states "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision whether to transfer a case under § 1404(a) falls within the sound discretion of the trial court. *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).

## ANALYSIS

Defendant moves pro se for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). (ECF No. 31). Defendant also appears to request a transfer of venue under 28 U.S.C § 1404(a). (*Id.*; Def.'s Reply Br., ECF No. 34). The Court will address each issue in turn.

### I.     Defendant's Motion to Dismiss

Defendant moves for dismissal under Rule 12(b)(2) for a lack of personal jurisdiction, and under Rule 12(b)(3) for improper venue. Defendant supports her motion by stating that she lacks the types of contacts traditionally considered in a personal jurisdiction analysis. (*See* Def.'s Br. at 2, ECF No. 31). She adopts Evan Tanenbaum's and John J. Andrews' arguments on this point from their earlier motions to dismiss. (*Id.*). Defendant also attacks the forum selection clause present in her loan agreements by stating that the loan agreements are usurious and void ab initio, so therefore the forum selection clause is also void.[2] (*Id.*).

Parties may consent to personal jurisdiction and venue by executing a valid forum selection clause. *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 469 (D.N.J. 1998); *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 320 (D.N.J. 1998). Therefore, Defendant's arguments as to her lack of contacts in New

---

[2] Defendant does not dispute that she signed multiple loan agreements with Plaintiff that specify Mercer County, New Jersey shall be the venue for any action relating to the loan agreements. She is therefore in a materially different position from Mr. Tanenbaum and Mr. Andrews, who had not signed any such clause.

5

Jersey are of no moment if the forum selection clause in the loan agreements is valid. The validity of a forum selection clause is analyzed under state law in the Third Circuit, and under federal law in the Second Circuit. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 357 (3d Cir. 1986). Since the loan agreements state that their terms are to be governed by New York law, and New York is in the Second Circuit, the Court shall analyze the validity of the forum selection clause under federal law. (Promissory Notes of 2008, 2011, and 2012, ECF No. 14-4).

Under federal law, the forum selection clause is prima facie valid and enforceable unless Defendant can show that: "(i) the forum selection clause was included in the contract as a result of fraud or overreaching; (ii) enforcement would violate a strong [New York] public policy; or (iii) enforcement would, in the particular circumstances of this case, result in litigation in a jurisdiction so seriously inconvenient to [Defendant] as to be unreasonable." *Gen. Eng'g Corp.*, 783 F.2d at 357 (describing the federal rule articulated in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Defendant does not address the above rule directly, but her arguments appear to fall under the second and third exceptions.

Defendant primarily argues that the loan agreements are usurious and void ab initio under New York law, thereby suggesting that enforcement of the forum selection clause in the loan agreements would violate a strong New York public policy (the second exception to prima facie validity). However, New York's public policy underlying its usury laws goes to the heart of this case. Defendant argues that Plaintiff's "loan shark activities are repugnant to public policy" and all the loans must be voided, (Def.'s Reply Br. at 3, ECF No. 34), while Plaintiff points to case law that finds New York's public policy does not always require a usurious loan be voided, depending on the circumstances of the case. (Pl.'s Br. at 12-13, ECF No. 32). The Court finds that the parties' dispute about what New York's public policy dictates in this case goes to the

6

merits, and is therefore inappropriate to decide on a motion to dismiss. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). This finding is bolstered by the fact that New York courts have decided this issue upon motions for summary judgment, not upon motions to dismiss. *See, e.g.*, *Abramovitz v. Kew Realty Equities, Inc.*, 580 N.Y.S.2d 269 (N.Y. App. Div. 1st Dep't 1992); *Angelo v. Brenner*, 457 N.Y.S.2d 630 (N.Y. App. Div. 3d Dep't 1982). Since Defendant is unable to definitively show at this stage that enforcing the forum selection clause "would violate a strong [New York] public policy," the Court finds that the forum selection clause is prima facie valid unless Defendant can carry her burden under one of the other two exceptions.

Defendant states that she is in poor health, which in deference to Defendant's pro se status, the Court will construe as an argument under the third exception to prime facie validity. The third exception dictates that a forum selection clause is not prima facie valid if "enforcement would, in the particular circumstances of this case, result in litigation in a jurisdiction so seriously inconvenient to [Defendant] as to be unreasonable." *Gen. Eng'g Corp.*, 783 F.2d at 357. Defendant has not carried her burden under this exception. Her moving brief contains a single sentence referencing recent surgeries and residual mobility problems that affect her ability to travel. (Def.'s Br. at 2, ECF No. 31). Her reply brief elaborates on these issues, and includes a doctor's note from 2014 to bolster her claims. (Ex. 3, Def.'s Reply Br., ECF No. 34). However, Plaintiff submits emails from Defendant that suggest Defendant is quite mobile, traveling between Long Island and New York City, and even down to Florida. (Ex. 4, Boxer Cert., ECF No. 14-8; Ex. D, Dorian Cert., ECF No. 14-9). Trenton is a little over one hundred miles from Defendant's current home on Long Island. The Court finds that Defendant has failed to show that her purported mobility issues render litigation in Trenton so inconvenient as to be "unreasonable." *Compare Davis v. Royal Caribbean Int'l*, No. 13-523, 2013 WL 3761058, at *3 (D.N.J. July 16, 2013) (holding that a party did not carry her burden because she failed to

7

demonstrate the severity of her medical condition or explain how it would prevent her from traveling to Florida), *with Lieberman v. Carnival Cruise Lines*, No. 13-4716, 2014 WL 3906066, at *4 (D.N.J. Aug. 7, 2014) (holding that a party carried her burden because she explained that she was taking chemotherapy for stage four terminal cancer and was currently bedridden).

Since Defendant has failed to demonstrate that any of the three exceptions apply here, the Court finds that the forum selection clause designating Mercer County, New Jersey as the venue for this case is prima facie valid and enforceable. Therefore, Defendant has submitted to this Court's jurisdiction, and waived any opposition to improper venue. *Ross Univ. Sch. of Med. v. Amini*, No. 13-6121, 2014 WL 29032, at *4 (D.N.J. Jan. 2, 2014) ("Defendant Amini submitted to the jurisdiction of the District of New Jersey by assenting to the Settlement Agreement's forum-selection clause."); *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 320 (D.N.J. 1998) ("Defendant, however, has waived any opposition to improper venue when it agreed to the forum selection clause."). Defendant's motion to dismiss based on personal jurisdiction and improper venue will therefore be denied.

## II. Defendant's Request to Transfer

Defendant requests in the alternative that the Court transfer this case to the Eastern District of New York. (Def.'s Br. at 1, ECF No. 31). 28 U.S.C § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision whether to transfer a case falls within the sound discretion of the trial court. *See Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir. 1989). In *Jumara v. State Farm Insurance Company*, the Third Circuit articulated a list of twelve private and public factors for district courts to consider when weighing whether an action should be transferred. 55 F.3d 873 (3d Cir. 1995). The private factors are: (1) the "plaintiff's forum preference," (2) "the

```
```

defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* at 879 (citations omitted).

The public factors to consider are: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80 (citations omitted).

Within the framework of the above twelve factors, the Third Circuit held that while forum selection clauses are not dispositive, they are entitled to "substantial consideration." *Id.* at 880. Starting with the first factor, a plaintiff's choice of forum is "a paramount consideration in any determination of a transfer request" and that choice "should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted). Courts therefore normally defer to a plaintiff's choice of forum. *Jumara*, 55 F.3d at 880. Given the alignment of the plaintiff's choice of forum and the forum selection clause in this case, Defendant has a heavy burden to show why a transfer would be appropriate. *Id.* at 879 (stating that the burden of establishing the need for transfer rests with the moving party).

Turning to the factor of where the claim arose, Plaintiff makes a strong argument that his injury occurred in New Jersey, where he resides and where he failed to receive repayment of the loans. (Pl.'s Br. at 16, ECF No. 32). The next factor, the convenience of the parties, weighs in favor of Defendant, given her health issues. Access to witnesses, books, and records does not

weigh in favor of either party.  This is a relatively small case, and the two proposed forums are in contiguous states.  The Court foresees no significant difficulties in accessing the necessary materials and witnesses in Trenton.

The first public factor is the enforceability of the judgment.  Defendant offers no arguments on this point, and the Court sees no reason why enforceability would be an issue in this case.  The second public factor, the practical considerations of having an expeditious and inexpensive trial, weighs slightly in favor of transfer.  The majority of the individuals involved in this case are from New York, and holding the trial there would on balance save the parties the expense of traveling to New Jersey.  Neither party makes arguments as to the next factor, relative court congestion, so the Court makes no findings on this point.  The next factors, the local interest in deciding local controversies and the public policies of the fora, does not appear to weigh in favor of either party.  New Jersey has an interest in providing a forum for its citizens to recover for their injuries, but New York may have an interest in seeing its usury laws enforced, or alternatively, in seeing that they are not abused.  The last factor, the familiarity of the trial judge with the applicable state law in diversity cases, weighs slightly in favor of transfer.  The Eastern District of New York is more familiar with New York law (which the agreement is governed by) than the District of New Jersey.  However, this Court frequently sees New York cases due to New Jersey's proximity to New York.  It is unclear if a trial judge in the Eastern District of New York would be significantly more familiar with the usury laws at issue here, particularly since the trial judge in this case has had the benefit of reading the parties' briefing on the issue.

In sum, Plaintiff has in his favor the forum selection clause, which is entitled to "substantial consideration," his choice of forum, which courts "normally defer to," and the third *Jumara* factor.  *Jumara*, 55 F.3d at 880.  Defendant has three *Jumara* factors that weigh slightly

in her favor (her apparent health problems, practical considerations, and the familiarity with the relevant state law in the two fora.)  On this balance, Defendant is unable to carry her burden to demonstrate the need for transfer.  Therefore, the Court will deny Defendant's request to transfer this case to the Eastern District of New York.

## CONCLUSION

For the reasons discussed above, Defendant's motion will be denied.  An appropriate order will follow.

                                                          */s/ Anne E. Thompson*
                                                ANNE E. THOMPSON, U.S.D.J.

Date: August 9, 2016